■ In the Matter of JEWISH ASSOCIATION FOR SERVICES FOR THE AGED, as Conservator of the Property of MARIA CEDENO, as Conservatee, Appellant. [674 NYS2d 34] —Order, Supreme Court, New York County (Emily Goodman, J.), entered on or about February 18, 1997, which denied the petition of the conservator for a final accounting and appointment of a guardian ad litem for the conservatee, and sua sponte appointed the conservator as guardian, unanimously reversed, on the law, without costs, the conservator directed to file its final accounting and the matter remanded to Supreme Court for the appointment of a guardian ad litem.

In April 1991, petitioner, the Jewish Association for Services for the Aged (JASA), was appointed conservator of the property of Maria Cedeno in its capacity as a community guardian program under Social Services Law § 473-c. In the fall of 1993, after a period of hospitalization for medical reasons, Cedeno was placed at the Jewish Home and Hospital in the Bronx, a permanent, long-term nursing-home facility. This placement was made by the hospital upon Cedeno's discharge, based upon its evaluation of her mental and physical disabilities, and JASA considered the placement an appropriate one. As a result of this placement, however, JASA was obligated to relinquish its duties as Cedeno's conservator, because, pursuant to Social Services Law § 473-c, it cannot provide such services for a person who has entered a residential facility on a long-term basis. Accordingly, JASA submitted a proposed order to Supreme Court, directing JASA to file an account for final judicial settlement and appointing an unnamed person as guardian ad litem to protect Cedeno's rights.

The court declined to sign the proposed order and instead *sua sponte* appointed JASA as guardian for Cedeno until such time as a substitute guardian could be appointed. It further directed JASA to submit an evaluation of Cedeno's needs and advised JASA that, upon receiving such submission, the court would work with JASA in locating an appropriate guardian (171 Misc 2d 689). While the court recognized that JASA was not permitted by statute to perform the services of a guardian of an individual in a long-term care facility, the court reasoned that, absent such appointment, JASA would be relieved of its responsibilities for Cedeno immediately (as required by the change in her living arrangements), and Cedeno would be without anyone to look out for her interests until such time as a guardian might be found. In the court's view, based on its experience with the lack of funding for the appointment of guardians under article 81 of the Mental Hygiene Law for indigent individuals, finding a guardian would not be easily accomplished. Thus, in declining to sign the proposed order and directing JASA to assume guardianship responsibilities, the court hoped to bridge what it foresaw as an inevitable gap between JASA's services and those of the to-be-named guardian.

However well intentioned the court's motives, the statute clearly prohibits JASA from assuming this responsibility. In so ordering JASA to assume guardianship for Cedeno, even for a limited, albeit indefinite, period, the court effectively transformed JASA from a community guardian program into a public guardianship program contrary to the provisions of both the

Social Services Law and the Mental Hygiene Law. Indeed, by changing JASA's scope of authority, which was previously limited to the protection of Cedeno's property, to include responsibility for her person as well, the order overlooked compliance with the requirements of various Mental Hygiene Law provisions that are involved in the appointment of a guardian (*e.g.,* Mental Hygiene Law §§ 81.23, 81.20, 81.21; *see generally, Matter of Maher*, 207 AD2d 133, 138-140, *lv denied* 86 NY2d 703, *rearg denied* 86 NY2d 886). Moreover, while, as noted, the court was prompted by concern for Cedeno's welfare, the very purpose of the statutory limitation on the authority of programs such as JASA is to ensure the provision of such services to disabled or incapacitated adults who are able to remain in the community by virtue of the assistance such programs provide (*see,* Historical and Statutory Notes, McKinney's Cons Laws of NY, Book 52A, Social Services Law § 473-c, at 391-392). Finally, we note that, in bringing this appeal to contest the court's *sua sponte* appointment, JASA has been placed in a position that could be deemed to create a conflict of interest with the very party it was intended to protect. For all the foregoing reasons, therefore, JASA's petition should have been granted. Concur—Milonas, J. P., Nardelli, Wallach and Andrias, JJ. [*See,* 171 Misc 2d 689.]